| | | |
|---|---|---|
| ZEPHRONNIA CARVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:04-0234 |
| | ) | JUDGE CAMPBELL/KNOWLES |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| ZEPHRONNIA CARVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:04-0991 |
| | ) | JUDGE CAMPBELL/KNOWLES |
| ANNE B. SHROUT, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon a Motion for Summary Judgment filed by Anne B. Shrout, M.D. Docket No. 38. Dr. Shrout has filed a Memorandum in Support of the Motion (Docket No. 39), a "Statement of Material Facts as to Which There Is No Genuine Issue for Trial" (Docket No. 40), and an Affidavit of Anne B. Shrout, M.D. (Docket No. 41). The referenced documents were filed January 20, 2005.

The United States has filed a "Preliminary Response" in opposition to the Motion, which also includes a "Request for Additional Time." Docket No. 49. That Response essentially

argues that there are disputed factual issues as to who bears liability for Plaintiff's injuries, and that additional time is needed to address those issues.

On March 18, 2005, Judge Campbell entered an Order requiring Plaintiff to file a Response to the Motion on or before March 31, 2005. Docket No. 51.

On March 31, 2005, Plaintiff filed a "Memorandum in Opposition" to the Motion for Summary Judgment (Docket No. 52), a "Concise Statement of Facts in Opposition" to the Summary Judgment Motion (Docket No. 54), the Affidavit of Zephronnia Carver (Docket No. 55), a "Notice of Filing of Reverse Image of X-ray" (Docket No. 56), and a "Notice of Filing" with attached medical records from Blanchfield Army Community Hospital (Docket No. 57).

On April 1, 2005, Judge Campbell referred the instant Motion for Summary Judgment to the undersigned for a Report and Recommendation. Docket No. 58.

On April 6, 2005, Plaintiff filed a "Notice of Filing," with attached medical records of Dr. John Stitt. Docket No. 59.

On April 12, 2005, Defendant Shrout filed a "Motion For Leave to File a Reply Memorandum." Docket No. 60. That Motion was granted by an Order entered April 15, 2005. Docket No. 62.

Also on April 12, 2005, Defendant Shrout filed a "Response to Plaintiffs' [*sic*] Concise Statement of Facts in Opposition to Motion for Summary Judgment of Anne B. Shrout, M.D." Docket No. 61.

The first of these consolidated cases, Zephronnia L. Carver v. United States of America, is a medical malpractice case filed by Plaintiff against Defendant as a result of a medical procedure performed upon Plaintiff on March 26, 2003, at Blanchfield Army Community

2

Hospital. On that date, Plaintiff underwent a surgical procedure and, some time later, discovered that scissors tips were left in the surgical incision. Plaintiff sued the United States, claiming that the physician who performed the surgery, Dr. Anne B. Shrout, as well as the other surgical nurses and doctors, were all employees of the U.S. Government.

The United States' Answer initially admitted that Dr. Shrout was its employee. Docket No. 6, ¶ 5. Later, the United States amended its Answer and denied that Dr. Shrout was its employee. Docket No. 10, ¶ 5.

Shortly after the United States filed its Amended Answer, Plaintiff filed suit against Dr. Shrout in state Court. Dr. Shrout removed that action to this Court, and it was subsequently consolidated with Zephronnia Carver v. United States.

The pending Motion for Summary Judgment is based primarily upon the facts set forth in Defendant's Affidavit, which establish that she complied with the applicable standard of care in her treatment of Plaintiff. She states that she was advised before closing on this surgery that the instrument count was correct, and that she closed Plaintiff's incision based upon this representation, which was given to her by nurses and scrub technicians who were employees of United States Government. Dr. Shrout states that it was not her responsibility to conduct the instrument count, and that she was entitled to rely on the nurses and scrub technicians to conduct the instrument count and to accurately advise her of the result.

Plaintiff has not submitted the Affidavit of any qualified expert to dispute Dr. Shrout's Affidavit testimony. Instead, Plaintiff has submitted her own Affidavit, which essentially states that she was "completely unconscious during the surgery." Plaintiff argues that the doctrine of res ipsa loquitur applies and that that doctrine is sufficient to defeat Defendant's Motion for

3

Summary Judgment.

It should be noted that the United States has previously filed a Motion to Dismiss, which the Court treated as a Motion for Summary Judgment because the Court considered matters outside the pleadings. Docket Nos. 14, 16. As will be discussed in greater detail below, one of the matters outside the pleadings considered by the Court was the Declaration of Jerry Izu, M.D. Docket No. 15, Ex. 2. The undersigned submitted an Report and Recommendation, recommending that that Motion be denied. Docket No. 46. Judge Campbell subsequently adopted and approved the Report and Recommendation. Docket No. 50.

For the reasons that follow, the undersigned recommends that the Motion for Summary Judgment of Defendant Anne B. Shrout be DENIED because, even though there are no disputed issues as to any material fact, Defendant is not entitled to a judgment as a matter of law.

## II. Undisputed Facts[1]

The following facts are established in the Affidavit of Dr. Anne B. Shrout. Docket No. 41.

Dr. Shrout is a medical doctor licensed to practice and practicing in the area of obstetrics and gynecology. She is Board certified as an Obstetrician Gynecologist, having received Board Certification in November, 1998. *Id.*, ¶¶ 1, 3.

Dr. Shrout was licensed to practice medicine in the state of Tennessee from February 11, 2002, through October 31, 2004. *Id.*, ¶ 4. During a period of time from August 2001 through June 2004, she practiced at the Blanchfield Army Community Hospital. *Id.*, ¶ 6. The hospital is

---

[1] The following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed, unless otherwise noted.

4

located in the state of Tennessee on the Ft. Campbell Army Post.  *Id.*

From October 1, 2002, through June 30, 2004, Dr. Shrout was employed as an independent contractor with Spectrum Healthcare Resources, Inc. *Id.*, ¶ 7.  Spectrum contracted with Humana, which ultimately contracted with the United States Army, for Dr. Shrout to provide medical services at Blanchfield Army Community Hospital.  *Id.*

Dr. Shrout's Affidavit states in pertinent part as follows:

> 8.  I am the physician who performed a laparoscopic assisted vaginal hysterectomy and bilateral salpingo-oophorectomy on Zephronnia Carver on March 26, 2003, at BACH.  During this surgery I used Snowden Pencer endoscopic shears with a reusable shaft and disposable switch blade scissors tips.  The shaft and the scissors tip separate one from the other.  The surgery went without incident.
>
> 9.  During the laparoscopic assisted surgery, I stand next to the patient's side and place small trocars into the patient's abdomen/pelvis.  A trocar in the umbilicus is used for the laparoscope which has a light source and camera attached to it.  The camera signal is transmitted to a video monitor screen above the patient's feet.  I observe the video monitor screen at all times.  I then place the laparoscopic instruments, such as the Snowden Pencer shears, through additional trocars by looking down at the trocar opening to direct the instrument into the trocar.  Then I observe the monitor to watch the instrument enter into the patient's abdomen/pelvis.  These instruments are used to manipulate, cut, dissect, and ligate tissue in order to achieve the desired effect.  I remove the instruments from the abdomen/pelvis by pulling them out through the trocar and passing them to the scrub nurse.  I continue to observe the monitor until the instrument is fully removed from the trocar.  Often there is more than one instrument in the pelvis through two or more trocars.  This requires the surgeon to pass off the instrument that was removed to the scrub nurse or lay it down on the surgical field without looking away from the monitor.  The only time that I observe the instrument after it comes out of the trocar is when that instrument is grasping tissue, a suture, or a needle that is being intentionally removed.  This allows me to ensure that the item being removed has not slipped out of the grasping instrument and fallen back into the

5

patient's abdomen.

. . .

12. During and following the surgery, it is the recognized standard of acceptable professional practice, for the scrub nurse or surgical technician and the circulating nurse to perform a count of all sponges, needles and instruments, which would include the Snowden Pencer Endoscopic Shears with a reusable shaft and disposable switchblade scissors tips which was used in the Carver surgery.

13. It was standard operating procedure at BACH and recognized standard of acceptable professional practice in Clarksville, Tennessee, on March 26, 2003, that the scrub nurse or surgical scrub technician and the circulating nurse perform counts of sponges, needles, instruments, and disposables first as the packages containing these items are opened and used, and again as the surgeon is closing the surgical incision. They are to notify the surgeon whether the count is correct or incorrect.

14. It is well-recognized in the surgical community that it is possible for a tip of an instrument, a sponge, or a needle to be left in a patient while surgery is ongoing. That in and of itself does not constitute a breach of the recognized standard of acceptable professional practice for surgeons. The fact that something may be left, inadvertently, in a patient is the reason that a proper instrument count, sponge count, and needle count is performed. It is important that a proper count be performed. It is not the surgeon's responsibility to perform the actual count.

15. I, as a surgeon, am not responsible for the actual counting of sponges, needles, instruments and disposables before or after surgery. I am responsible to ask for a count at the closing of the case. The count typically includes sponges, needles, disposables, sharps, and instruments.

16. I, as a surgeon, do not become involved in counting instruments or sponges unless I am told that the count is not correct. If I am informed that a count is incorrect, then I will attempt to locate a missing item. This count is to be done at such time as the surgery is being concluded, and before the incision is closed. It is appropriate that this count be done before the surgical incision is closed, so as to find the instrument or any foreign object

6

> which has been left behind, and if necessary, to take a simple x-ray of the patient, to determine if something is located in the patient.
>
> 17. In Zephronnia Carver's case, I asked for a count at the closing of the case. I was never told that the count was incorrect. To the contrary, I was told that the instrument was correct.
>
> . . .
>
> I am familiar with the recognized standards of acceptable medical practice for gynecological surgeons in Montgomery County, Tennessee, during March, 2003.
>
> 20. At all times during my care and treatment of Ms. Carver I conformed with recognized standards of acceptable practice for reasonably competent gynecological surgeons performing under the same circumstances as those presented by Zephronnia Carver.

Docket No. 41.

Dr. Shrout further identifies a surgical scrub technician, an assigned circulatory nurse, and a relief circulatory nurse, who "were the United States employees responsible to perform the count during Zephronnia Carver's surgery on March 26, 2003, at Blanchfield Army Community Hospital." *Id.*, ¶ 11.

There is no dispute that the scissors tips referred to above were left in Plaintiff's abdomen during the surgery. Docket No. 61, p. 4.

As discussed above, the United States previously filed a Motion to Dismiss with accompanying Exhibits. Docket Nos. 14, 15. One of the Exhibits was the Declaration of Dr. Jerry Izu. According to his Declaration, on March 26, 2003, Dr. Izu, an Army officer at the time, was a fourth-year resident and the assigned assistant surgeon to Dr. Shrout for Plaintiff's surgery. Docket No. 15, Ex. 2, ¶ 1. Dr. Izu's Affidavit states in part as follows:

> 2. As the assistant surgeon, my responsibilities include assisting Dr. Shrout during the course of the procedure. As such, I have the

7

>requisite knowledge to discuss the procedure in question.
>
>3. Regarding my participation in the procedure in question, I never assisted Dr. Shrout with the manipulation of the endoshears, nor would I have been requested to do so. At all times that the surgical shears in question were inside of the body of Plaintiff, Dr. Shrout had exclusive, direct, and total physical control over the device. If at any time during the course of the procedure the tips of the surgical shears came off and into the body of Plaintiff, they would have been under the exclusive and direct physical control of Dr. Shrout. After the endoshears were removed from the body of Plaintiff, they were handed to the attending nurse, who placed the endoshears on the instrument table.

*Id.*, ¶ 2, 3.

In connection with her opposition to the pending Motion for Summary Judgment, Plaintiff submitted a "Concise Statement of Facts in Opposition to Motion for Summary Judgment of Anne B. Shrout, M.D." (Docket No. 54), and Defendant's Responses thereto (Docket No. 61). One of the "facts" and the response to it states as follows:

>8. At the time the endoshears were in the body of Ms. Zephronnia Carver, Dr. Shrout had "exclusive, direct, and total physical control of the device." As the staff physician, Dr. Shrout was "the captain of the ship" and ultimately responsible for addressing any equipment problems. See, Declaration of Doctor Jerry Izu, Assistant Surgeon of Dr. Anne Shrout, ¶ 3.
>
>RESPONSE: It is admitted that the Plaintiff accurately quotes a portion of the Declaration of Doctor Jerry Izu, Assistant Surgeon for [*sic*] Dr. Anne Shrout, ¶ 3. It is denied that the Captain of the Ship Doctrine is recognized in Tennessee. See Parker v. Vanderbilt University, 767 S.W.2d 412 (Tenn. App. 1988). It is denied that Dr. Izu's assertion that Dr. Shrout was "ultimately responsible for addressing any equipment problems" is a statement of fact; it is an argumentative attempt to state a conclusion. It is denied that the language quoted from Dr. Izu's language [*sic*], even if it is a statement of fact, is a material fact because it is uncontradicted that Dr. Shrout did not breach the applicable standard of acceptable professional practice. See Affidavit of Shrout, ¶¶ 14, 20.

8

Docket No. 61, p. 3-4.

### III. Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 202 (1986); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the non-moving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a non-moving party, however, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id*. at 322-23; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

9

## IV. Analysis

Plaintiff has raised three separate claims against both Defendants in these actions: (1) medical negligence (medical malpractice); (2) common law battery; and (3) "Breach of the Consent Form signed by the Plaintiff."[2] There is no dispute that all Plaintiff's claims are governed by Tennessee substantive law.[3] Rule 56 of the Federal Rules of Civil Procedure and federal cases construing it govern the propriety of summary judgment.[4]

The issue presented in this case, essentially, is whether Plaintiff is required to prove the essential elements of her claims against Dr. Shrout by expert testimony as required by Tennessee statutes. If she is required to do so, summary judgment is appropriate for Dr. Shrout, because Plaintiff has not come forward with an appropriate expert to prove the essential elements of her claims. On the other hand, if Plaintiff can rely upon a recognized exception to the rule requiring expert testimony, Defendant Dr. Shrout is not entitled to summary judgment.

It is undisputed by the parties that this action is governed by Tennessee statutory

---

[2] The only claim specifically discussed by the parties in the pending Motion and Response is the medical malpractice claim. The parties do not discuss Plaintiff's common law battery or informed consent claims. Thus, this Report and Recommendation will not address those claims separately.

[3] Plaintiff's complaint against Dr. Shrout was initially filed in state court and subsequently removed to this Court on the basis of diversity of citizenship. Tennessee substantive law, therefore, applies to these claims. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938). Additionally, Plaintiff's federal tort claims against the United States are governed by Tennessee law, because the acts or omissions of which Plaintiff complains occurred in the state of Tennessee. *See* 28 U.S.C. §§ 1346(b), 2674; *Ward v. United States,* 838 F.2d 182, 184 (6th Cir. 1988).

[4] There is no substantial difference between the standards for summary judgment under Tennessee law and under federal law, and neither party argues that there is. *See Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993).

10

provisions that were first enacted in 1975.[5] Those provisions will be discussed in detail below. Some understanding of prior Tennessee common law, however, will be helpful to a resolution of the issue presented.

Even before 1975, Tennessee courts recognized a general common law rule and an exception to that rule in medical malpractice cases:

> It is the established law in Tennessee that [medical] malpractice actions involving issues of negligence and proximate cause require expert testimony, *St. Martin v. Doty*, 493 S.W.2d 95, 98 (Tenn. App. 1972) unless the act of alleged malpractice lies within the common knowledge of a layman. *Rural Education Association v. Bush, 42 Tenn. App. 34, 298 S.W.2d 761 (1956). See also Phelps v. Vanderbilt University, 520 S.W.2d 353 (Tenn. App. 1974.)*

*Bowman v. Henard,* 547 S.W.2d 527, 530-31 (Tenn. 1977) (italics in original).[6]

In *Bowman*, the Court addressed the propriety of dismissing a medical malpractice action on the basis of opinion evidence as contained in Affidavits of medical doctors. The Court noted, "This is a question of first impression in this jurisdiction." *Id*. at 528. In *Bowman*, Defendant Dr. Henard had filed an Affidavit, and the Affidavits of two other physicians, which essentially established that he was familiar with the standard of care and that he did not breach the standard of care. Plaintiff did not respond with any Affidavits from experts, but instead responded with the Affidavit of one of her counsel, which essentially stated his opinion that "A case of

---

[5] In 1975, the Tennessee General Assembly enacted the "Medical Malpractice Review Board and Claims Act of 1975." Acts 1975, Ch. 299 §§ 1-13, 20. The provisions relating to the Medical Malpractice Review Board, along with certain other provisions not material here, were repealed in 1985. Acts 1985, Ch. 184, § 4.

[6] Even though *Bowman* was decided in 1977, it apparently was not subject to the statutory scheme enacted in 1975. The *Bowman* Court never discusses those statutes and it is clear that the above-stated rule, which relies upon cases decided before 1975, was the common law rule.

11

negligence can be made out." *Id*. at 529.

The *Bowman* Court noted the general rule that opinion testimony is not an appropriate basis for summary judgment, because such testimony is subject to evaluation by the fact finder. But the Court recognized an important exception to this general rule: "[I]f the only issue is one of the kind on which expert testimony must be presented, and nothing is presented to challenge the affidavit of the expert, summary judgment may be proper." *Id*. at 530. The *Bowman* Court stated as follows:

> In summary we hold that, in those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise. *In those cases wherein the acts are complained of are [sic] within the ken of the common layman, the affidavit of medical experts may be considered along with all other proof, but are not conclusive.*

*Id.* at 531 (emphasis added).

Thus, if the common knowledge exception is applicable, a plaintiff does not have to prove his case by expert testimony. Additionally, if the common knowledge exception is applicable, a defendant may not obtain summary judgment by filing an Affidavit from a competent expert stating that defendant did not violate the standard of care.

In 1975, the Tennessee General Assembly passed the Tennessee Medical Malpractice Act. It is undisputed by the parties that this action is governed by the following statutory provisions:

> **29-26-115. Claimant's burden in malpractice action – Expert testimony – Presumption of negligence – Jury Instructions. –**
> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

12

>    (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>    (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>    (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>    (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession nor specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.  This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses.  The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.
>    (c) In a malpractice action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.
>    (d) In a malpractice action as described in subsection (a), the jury shall be instructed that the claimant has the burden of proving, by a preponderance o the evidence, the negligence of the defendant.  The jury shall be further instructed that injury along does not raise a presumption of the defendant's negligence.

T.C.A. § 29-26-115(a) and (b) essentially provide that a plaintiff in a medical malpractice action has the burden of proving the "standard of care" applicable, a breach of that standard by the defendant, and proximate cause.  Under T.C.A. § 29-26-115(a), plaintiff must prove these matters "by evidence as provided by subsection (b)."  Subsection (b) essentially provides that

13

these matters must be established by an expert, who was licensed to practice in the state of Tennessee or a contiguous state, a relevant profession or specialty and that the expert had practiced this profession or specialty in one of these states during the year preceding the alleged injury or wrongful act.

Although it may not be readily apparent on first reading of the statute, subsection (c) provides a significant "exception" to the requirements of subsections (a) and (b). Subsection (c) provides for a rebuttable presumption "that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's or defendants' exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence."

Numerous Tennessee cases have stated the proposition that subsection (c) is essentially a codification of the common law doctrine of res ipsa loquitur. *See Seavers v. Methodist Medical Center of Oak Ridge,* 9 S.W.2d 86, 93 (Tenn. 1999) (referring to § 115(c) and stating, "Pertaining to the doctrine of res ipsa loquitur, the Act essentially codified the common law."); *McConkey v. State*, 128 S.W.3d 656, 659 (Tenn. Ct. App. 2003), *permission to appeal denied id.* ("Section (c) of Tenn. Code Ann. § 29-26-115 is a codification of the common law doctrine of res ipsa loquitur . . . ."). The *McConkey* Court described the doctrine of res ipsa loquitur as follows:

> Where the thing [causing the harm] is shown to be under the management of defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.

*Id*. at 659-60.

14

If the doctrine of res ipsa loquitur is applicable, a plaintiff does not need expert testimony to prove the essential elements of her case. *Seavers v. Methodist Medical Center*, 95 S.W.3d 86 (Tenn. 1999). Moreover, if the doctrine of res ipsa loquitur is applicable, a defendant is not entitled to summary judgment even if she establishes the requirements of subsection (a) by expert testimony as required by subsection (b). *Id.* at 91.

The *Seavers* Court stated in pertinent part as follows:

> Under Tennessee law res ipsa loquitur is a form of circumstantial evidence that permits, but does not compel, a jury to infer negligence from the circumstances of an injury. . . . *The weight of any inference to be drawn from the evidence is for the determination of the jury.*

9 S.W.3d at 91 (footnote and citations omitted, emphasis added).

In fact, in *Seavers*, the defendant had presented expert Affidavits stating that defendant had complied with the standard of care. The trial court had granted summary judgment to defendant after concluding that res ipsa loquitur was inapplicable. The Supreme Court, however, concluded that the doctrine of res ipsa loquitur was applicable, and it reversed the trial court's decision.

In addition to the res ipsa loquitur exception to the provisions of T.C.A. § 29-26-115(a) and (b), Tennessee courts have also carried forward the "common knowledge" exception that had been recognized by common law prior to the enactment of the statute. *See, e.g., Runnels v. Rogers,* 596 S.W.2d 87 (Tenn. 1980); *Baldwin v. Knight*, 569 S.W.2d 450 (Tenn. 1978).

The common knowledge exception and the doctrine of res ipsa loquitur set out in subsection (c), while similar, are not the same. For example, the *Seavers* court recognized the proposition that subsection (c) could apply in a case in which plaintiff's injury was not within

15

the common knowledge of lay persons. Additionally, the *Baldwin* court applied the common knowledge exception to the rule requiring expert testimony in a case in which the defendant's physician failed to detect the presence of a foreign body in a wound sustained by plaintiff while mowing his lawn. That case was not a res ipsa case, however, because there was no instrumentality that was within the exclusive control of the defendant that caused an injury to the plaintiff.

The second requirement for the application of res ipsa loquitur as set out in subsection (c) ("that the accident or injury was one which ordinarily doesn't occur in the absence of negligence") is similar to the common knowledge exception ("the act of alleged malpractice lies within the common knowledge of a layman"). In fact, one Tennessee court has stated as follows:

> It seems to us that the inference of negligence obtained by the application of res ipsa . . . and the common knowledge exception to the requirement of expert testimony . . . are just about Siamese twins in that both require that it be evident to all, that is judicial notice be taken, that the injury complained of does not ordinarily occur absent negligence.

*Murphy v. Schwartz*, 739 S.W.2d 777, 778-79 (Tenn. Ct. App. 1986).

Defendant is not entitled to judgment as a matter of law if one of the two exceptions discussed above (either the common knowledge exception or the doctrine of res ipsa loquitur) is applicable.

With regard to the common knowledge exception, the leaving of a sponge or surgical instrument in a patient's body has long been held by Tennessee courts to be negligence within the common knowledge of ordinary laymen. One of the early Tennessee cases on this subject stated:

> Professional or expert testimony was not necessary to establish

16

>           that leaving the sponge in plaintiff's body was negligence. Any
>           layman would know that fact.

*Rural Education Association v. Bush*, 298 S.W.2d 761, 768 (Tenn. Ct. App. 1956). Additionally, one Tennessee court has referred to the leaving of a sponge in the patient's body following surgery as a "classic example[ ]" of the common knowledge exception. *McConkey v State,* 128 S.W.3d 656, 660 (Tenn. Ct. App. 2003).

Therefore, this case falls within the common knowledge exception to the expert testimony requirement, and Defendant is not entitled to a judgment as a matter of law.

With regard to res ipsa loquitur, under subsection (c), there are two requirements for the rebuttable presumption of the defendant's negligence to arise: (1) "the instrumentality causing the injury was in the defendant's or defendants' exclusive control"; and (2) "the accident or injury was one which ordinarily doesn't occur in the absence of negligence."

In the case at bar, the proof is undisputed that the instrumentality causing the injury (the scissors tips and/or the shears of which they were a part) were in the exclusive control of Dr. Shrout. Although other persons were responsible for handing the instruments to Dr. Shrout and for performing a count prior to closing, Dr. Shrout's explanation in her Affidavit of the surgical procedure clearly shows that the scissors tips and/or the shears of which they were a part were under her exclusive control at all relevant time periods. While Dr. Shrout's Affidavit discusses who was responsible for the count, apparently in an attempt to imply that the scissors tips and/or shears were not in her exclusive control at all times, she never specifically denies that they were in her exclusive control at all times that they may have caused injury to Plaintiff. Additionally, Dr. Izu's Declaration establishes that Dr. Shrout had "exclusive, direct, and total physical

17

control" of the scissors tips and/or the shears.[7]

The second requirement for the application of res ipsa loquitur under subsection (c) is that "the accident or injury was one which ordinarily doesn't occur in the absence of negligence." As has been discussed above with regard to the common knowledge exception, this is clearly the case.

Thus, the requirements of subsection (c) have been met, the doctrine of res ipsa loquitur is applicable, and Defendant is not entitled to a judgment as a matter of law.

### IV. Conclusion

For the foregoing reasons, the undersigned concludes that, while there is no genuine issue as to any material fact, Defendant Shrout is not entitled to a judgment as a matter of law. Thus, her Motion for Summary Judgment (Docket No. 38) should be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[7] As discussed above, Plaintiff submitted a "Concise Statement of Facts in Opposition to the Motion for Summary Judgment of Anne B. Shrout, M.D.," which referred to Dr. Izu's Affidavit. Docket No. 54, p. 5. While Defendant disputed Dr. Izu's statement concerning the "Captain of the Ship" doctrine, Defendant did not dispute Dr. Izu's statement concerning Dr. Shrout's exclusive control. Docket No. 61, p. 3-4.

18

_____
E. Clifton Knowles
United States Magistrate Judge

19